I'm a senior deputy attorney general employed by the Office of the Attorney General of the State of Nevada. I have the privilege of representing the appellant's respondents. And I respectfully request that this court reverse the federal district court's grant of habeas relief in this particular case. To get to the nub of this, and that is when all is said and done, the error in giving the casulant an instruction is harmless. It's harmless under Brecht. It's harmless beyond a reasonable doubt. This court can be fairly assured that the jury did not convict Mr. Moore on the basis of an improper instruction. As this court cited in Babb U.S. v. Hastings, this court should look to what evidence the jury necessarily credited. In this particular case, the jury found that Mr. Moore was not only guilty of the underlying robbery, he was guilty of conspiracy to commit robbery. Conspiracy to commit the robbery of the deceased victim in this particular case. And what we know from that, and what we know from the application of Hastings, we look and see what evidence from that the jury necessarily credited. And when we look at that in light also of what elements are necessarily to be proven under felony murder in Nevada, there can be no doubt that the felony murder conviction, that the conviction of first degree murder stands on the basis of a felony murder conviction in this. As I said, he was convicted of conspiracy to commit robbery. The instructions and indeed the law of Nevada shows that he had to, Mr. Moore had to have the intent to commit robbery in order to be convicted of the robbery. And we look at instruction number 47 where the purpose of a conspiracy is to commit a dangerous felony. And there's overwhelming evidence to support that. And it's important to note in this particular case too, the defense was, the defense argued several times in its closing argument that Mr. Moore was merely present in this. And they asked for and were given a mere presence instruction. However, it's obvious that the jury rejected that. And it's important to note too, not only was the defense that he was merely present, the defense was not, it was not that the killing was not in the course of a robbery. That's an important distinction. The defense did not argue that the killing in this case was not in the course of the robbery. It was simply, well, Mr. Moore was a young kid. He was being led around by cheese. And he, and if you look at the defense counsel's closing arguments, just nothing proves anything. Nothing proves anything. It's reasonable doubt. It doesn't connect my claim. But they do talk about the four theories. I guess my precise question is, what evidence do you think we ought to look to for the premeditation? So when we're making this judgment that we need to make on harmless or not harmless error, what specific evidence? I'm not sure I understand the question, Your Honor, because as I understand it, you're saying that the instruction, the Kaslan instruction as has been held in Polk, Chambers, and Babb is out the window. So are you asking me what evidence can show that he had the specific intent to commit the robbery under the conspiracy? Yes. Oh, well, he said so. He said our intent was to, our intent was. Let me just see if I understand. Your basic argument is because conspiracy was one of the four theories that. Well, it was a separate charge. It was a separate charge. But that alone is sufficient to sustain the conviction. Yes, it is. Because under Nevada law, conspiracy to commit robbery. And the jury also found separately that a robbery was committed. Conspiracy to commit robbery requires the specific intent to commit the robbery. The robbery was committed. The robbery is of the deceased victim. It was indisputably in the course of the conspiracy and the robbery. And, indeed, when we look at counsel in his supplemental brief, cites to Ney v. State with the suggestion that because there was at some point in time a change in the particular way they were going to go about this robbery, that somehow has a bearing on this case. However, it doesn't. I would direct this court's attention to jury instruction number 47, appearing at supplemental excerpt of the record 498. It says, where the purpose of the conspiracy is to commit a dangerous felony such as robbery, each member runs the risk of having the venture end in homicide, even if it was not intended as part of the original plan. Or, he has forbidden the others to make use of deadly force. Tell me where the district court went wrong on your conspiracy theory when the district court basically lays out the elements with respect to conspiracy and then goes on to say, under this theory, the jury needed to find one of the members of the conspiracy acted with willfulness, deliberation, and premeditation, and thus the defective Kaslan instructed impacted this theory of guilt. That's the incorrect statement of Nevada law, Your Honor. And what is incorrect on the statement? Well, because you don't have to find premeditation and deliberation. All you have to do is find A, the existence of the conspiracy, which the jury did, and the intent to commit the underlying crime, whatever that crime is. So you're saying that his statement that the member needed to do so with premeditation and deliberation is incorrect? Yes. With respect to the jury instructions. That's correct. Now, as I pointed out, there's overwhelming evidence that the killing was, in fact, part of the robbery. And in light of BAB, now, this case does not match BAB exactly in its harmless error analysis. There is not an instruction as there was in BAB saying, well, don't consider premeditation or deliberation or whatever until you've reached these other things. That circumstance does not exist. However, if you look at counsel's arguments, the premeditation and deliberation theory, in our estimation, is de minimis. And the focus was more on the vicarious liability, at least insofar as the prosecution is concerned. But if you apply U.S. v. Hastings, then you look at what the jury necessarily credited. And, again, there was no dispute that the homicide occurred during the course and scope of the conspiracy and the robbery. And, indeed, the Nevada Supreme Court, and I believe it's the very first sentence or two in its decision on direct appeal, indicated as much. With respect to the jury. What should this Court decide so far as you're concerned? I beg your pardon, Your Honor? What should we decide so far as you're concerned? So far as we're concerned, this Court should find that the jury did convict on a felony murder theory, the felony murder theory that's there. This Court is fairly assured. I think, frankly, we've undertaken a burden, you know, to show that it's harmless beyond a reasonable doubt. And I think we have demonstrated that. However, I don't think we need to meet that burden. We have fairly assured this Court that that was the basis. That's what I'm having some trouble with when you have these four different bases on which they could have convicted. We don't have a special verdict. How do we land where you would like us to land? I mean, you're saying, well, because they must have. Well, okay. In Respondent's view, there's overwhelming evidence for all the theories. Okay. Overwhelming evidence for all the theories. The easiest one for this Court to hang its hat on, to use the vernacular, I submit, is the felony murder. Because when you use the Hastings test and you examine what the jury necessarily credited, they had to have found the existence of felony murder. It was a guinea, to use the vernacular again. But, you know, the prosecutor said, hey, it's overwhelming. I think if you look at supplemental excerpt of the record 212 and 213, the prosecutor said, oh, this is overwhelming. You've got all of this. And, indeed, in fact, it is. With respect to the NAY case cited by Petitioner in his supplemental brief, as I pointed out, well, what NAY stands for in a case later decided, decided after Moore's direct appeal. Moore was tried in 1999 while his direct appeal was done in 2001, I believe. NAY was decided in 2007. But counsel, Mr. Moore's counsel, made no argument or any suggestion that the intent to commit the underlying felony arose after the events. No such instruction was asked for. No such instruction was given. And the facts, as I've set out in the briefs and Moore's own statements, show that the intent to commit the robbery existed prior to the homicide. It didn't arise afterwards. That the NAY defense, if you will, that the intent arose sometime after the homicide was not advanced by defense counsel. Indeed, there was no contesting at all, as I said, that the robbery occurred during the course, excuse me, the homicide occurred during the course of the event. Indeed, even if it did, and I'm just throwing this out for argument, Mr. Moore is still vicariously criminally liable on the conspiracy theory. He said, we had the intent, we were going to rob this guy. As I said, to the extent it's offered as a change, you know, the plan to support the argument, while there was a change in plan, that does not help because jury instruction 47 says change in plan doesn't help you. Unless you have any other questions, I'd like to reserve the remainder of my time. Thank you. Somebody made some tragic miscalculations. It happens to some extent or another in all of these cases, Your Honor. My name is Ryan Norwood. I represent Mr. Moore. The reason why the court can't be fairly assured that this error is harmless is because at Mr. Moore's trial, the prosecution is doing the legal equivalent of throwing everything against the wall to see what will stick. He's charged with four different theories, first-degree murder, three of which require premeditated murder and involve the Casolet instruction. If I'm understanding the state, they are equivalent with whether or not the conspiracy theory involved that. I would direct the court to the jury instruction, EOR 483, instruction number 32. I'm looking at that right now, and that was going to be my question because it seemed that the other jury instructions on conspiracy didn't really use premeditated. But instruction number 32, subpart 3, says premeditated and deliberate murder as a result of aiding and abetting another to commit the murder, which is basically the conspiracy theory? Yes. So it's in the jury instruction, right? Yes. The jury is specifically told that they have to find out if it was a conspiracy, but that conspiracy led to a premeditated murder as defined by Casolet. I think the reason there may be some confusion is that there's also this independent conspiracy charge that's hanging around, so that there may be some crossing up the instructions. So then I think I heard, however, the Attorney General say, but you don't have the same situation with the felony murder, and therefore, because they could have found that among the four, that it's not harm, it's not error. I think that is their argument, that the jury could have found felony murder, but that's not the inquiry under Babb. The inquiry is not. Didn't he go further? I mean, I thought he even used the term the evidence is overwhelming. Well, I. You know, that the jury found first they did find that robbery was committed, right, a felony. They found that he committed a robbery. All right. So and then he said added to that, the evidence is overwhelming that, you know, a felony murder. Your Honor, I've argued harmless error many times. I don't think I've ever had a case where the State hasn't claimed that the evidence isn't overwhelming. So they're claiming that here, too. The specific point about. Let me put it this way. If the jury found, returned a verdict of guilty on felony murder, how much more does he have to prove to prove felony murder? He, meaning the State. The fact that he was convicted of a robbery doesn't mean that he was convicted of a felony murder involving a robbery. That's my question. So how much more does the State have to prove to prove felony murder? The question would be, under Nevada law, when the intent formed. You can commit a robbery, you know, by taking things from a dead person, even if you had no prior intent before the person died. That's not true with felony murder. I mean, what it says here is the murder was perpetrated in the furtherance of a robbery. Exactly. He says the evidence on that point is overwhelming. The problem here is that there are actually two different robberies involved with the case. I mean, what Mr. Moore says in his confession. I note that almost all of the evidence against Mr. Moore comes from this confession. This is a 17-year-old who's making a statement to some police in a juvenile hall. He says that he planned with these other older men a robbery that was supposed to take place inside an apartment complex and that was supposed to involve some people there who were supposedly drug dealers. That robbery never happened. What happened is that while they were waiting outside, a person who turned out to be a food delivery man left the apartment and the leader of this group, an older man, Morris, said, decided, sui sponte, let's go rob this guy, and he runs off. It's not at all clear from Mr. Moore's statement that he had any prior intent to commit this robbery. It's not at all clear from his statement that he was actually involved with this robbery. He says that he wasn't even on the scene when it happened, that he was following after him, and that's when he heard the gunshots. What the State did at the trial was they focused on the fact that there was evidence that Mr. Moore was involved in the after-the-fact taking. He had denied it in the statement, but they talked about some of the physical evidence in this case, which included two sets of footprints that went up to the car and the fact that Mr. Moore's scent was tracked to the red bag that was taken from the decedent. They argued that he was guilty of the robbery because he had taken that bag. Under Nevada law, that would be sufficient proof of a robbery, and assuming he was chatting with Mr. Moore beforehand about it, that there was a conspiracy to commit the robbery. But it wouldn't necessarily prove the felony murder. The other problem with the instructions here is the jury is specifically told by the court and reminded by the prosecutor that they don't even need to agree on which theory is there. So four of the jurors could have agreed on one theory, four of them could have agreed on another theory, and four of them could have agreed on a third theory. Babb talks at some length about the problem that Nevada's general verdict procedure creates in cases like these. It is very difficult when we have a general verdict that doesn't tell us which of the four theories the jurors agreed on to tell what actually happened in this case, and what actually happened in the case is the very question that has to be answered to find an error harmless. I mean, Nevada, while the procedure is not constitutionally defective, it's not constitutionally required either. So this is a problem that Nevada could fix by changing its procedures, but as long as they have it, we're going to be stuck with these harmless error inquiries. The reason Babb was able to find the error harmless in that case was because of a couple of specific factors that aren't present here. In Babb, even though there were the multiple theories, the prosecutor focused almost exclusively on the felony murder theory in his argument to the jury. And, in fact, there was a specific instruction telling the jury that they should prioritize the felony murder theory above all the other theories. Nothing like this happened here. The prosecutor in this case is arguing all the theories. I note even now, you know, in their briefing, the State is still not saying that none of these other theories are good. In fact, they're still defending the viability of all these other theories. In fact, they've just now argued that there was, in fact, overwhelming evidence supporting the other theories. That's all the more reason why it's really hard to find that the error is harmless, because the jury agreed on the felony murder theory. Again, the point I would make is that we are not drawing on a blank slate here in terms of making harmless error determinations. This case has some similarities to Polk. You know, I think the State is still sort of stuck in this pre-Kazalin mindset, where any type of intentional killing is automatically a first-degree killing. That's not necessarily the case. In this case, there was no prior evidence of intent to commit the shooting. You know, the statement about the shooting, which was actually done by Mr. Morris, was that the person was driving away. I shot at him to stop him. It's not at all clear that the State could prove that that was premeditated and deliberate murder under the correct Biford instruction. It's similar to Polk, which is a case where there were multiple shots fired. There, again, there was considerable evidence of prior deliberation, including a specific threat to kill, the decision that was made by the defendant some months before, and the fact that he was wearing a bulletproof vest. The Court still found that that error was harmless. In fact, Polk was convicted of second-degree murder upon retrial. When the State is doing this, when they're throwing everything against the wall like this to see what will stick, the Court simply, and when there's no priority given to any of the theories, and when there is very good reason to believe that three of the theories would have come out differently but for the fault of the instruction, the Court simply can't be reasonably assured that an error like this is harmless. Unless the Court has any more questions, I would preserve the balance of my time and submit the case and ask the Court to affirm the ruling of the Court below. All right. Mr. Whelan. Thank you. Just very briefly, as in BAB, reasonable probability the jury convicted Moore on a valid felony murder theory. That's evidenced by the conspiracy to commit robbery and the robbery with use of deadly weapon conviction. All right. There's overwhelming evidence in support of that. You can be reasonably certain that the jury did not convict on the other charge, the faulty CASLIN instruction, and even if it did, even if it did, the valid felony murder theory still exists as overwhelming evidence for that. That's what makes the error harmless. And, indeed, under Harrington, this Court needs to give deference to the Nevada Supreme Court's judgment in that respect. This Court has to look for, well, doesn't because I've already provided it, but, I mean, it's there, look what theories can sustain the Nevada Supreme Court's judgment, even in light of the error that is viewed as CASLIN error. And in that circumstance and under the relaxed standards, I respectfully submit to the Court that the Federal District Court erred in granting federal aid disrelief, and I ask that this Court reverse that decision unless you have any other questions. It appears not. Thank you. Thank you. Thank both of you for the argument. Moore v. The Nevada Attorney General is submitted.
judges: Farris, Tashima, McKeown